IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2021

**KEITH LAMONT BROWN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Tipton County**
**No. 8805       Joe H. Walker, III, Judge**

**No. W2020-01268-CCA-R3-PC**

A Tipton County jury convicted the Petitioner, Keith Lamont Brown, of delivery of 0.5 grams or more of cocaine, and the trial court sentenced him as a Range III, persistent offender to twenty-five years of incarceration. The Petitioner appealed his convictions to this court, and we affirmed the judgments. *State v. Keith Lamont Brown a.k.a. "Kee Kee"*, No. W2018-00731-CCA-R3-CD, 2019 WL 2158103, at *6 (Tenn. Crim. App., at Jackson, May 16, 2019), *no perm. app. filed*. Subsequently, the Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel, which the post-conviction court denied after a hearing. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Bryan R. Huffman, Covington, Tennessee, for the appellant, Keith Lamont Brown.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Erik Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

This case originates from the Petitioner's participation in the sale of cocaine in a controlled buy with a confidential informant for the Twenty-Fifth Judicial District Drug Task Force in Covington, Tennessee, on February 25, 2016. *Id.* at *1. Based on these events, a Tipton County grand jury indicted the Petitioner for delivery of 0.5 grams or more

of cocaine.

## A. Trial

The following is a summary of the facts presented at trial:

Investigator Randal Robbins testified that Mr. Sean Browder, the confidential informant, contacted him and identified the [Petitioner] as someone from whom he could purchase drugs. Investigator Robbins and Officer Tony Doss met with Mr. Browder prior to the drug transaction. Investigator Robbins patted down Mr. Browder and had Mr. Browder empty his pockets and turn them inside out. Investigator Robbins placed an audio/video recording device on Mr. Browder's person and gave him $ 150 in bills with recorded serial numbers to purchase drugs.

Investigator Robbins testified that Mr. Browder engaged in a text message exchange with someone who was listed as "Key" in Mr. Browder's cell phone. Investigator Robbins stated that the [Petitioner] was known as "KiKi," and Officer Doss testified that he was aware that the telephone number to which Mr. Browder sent text messages belonged to the [Petitioner]. Mr. Browder sent the first text message to the [Petitioner] at 2:17 p.m., and the final text message from the [Petitioner] was received at 4:27 p.m. and stated, "My boy is meeting you. He's there." The drug transaction occurred within five minutes of the final text message. Mr. Browder sent screenshots of his text message exchange with the [Petitioner] to Investigator Robbins.

Investigator Robbins stated that the [Petitioner] chose the location of the drug transaction and directed Mr. Browder to multiple locations before the drug transaction occurred. Investigator Robbins explained that drug dealers often conduct "counter surveillance" by instructing a buyer to go to multiple locations while someone who works for the dealer watches to ensure no one is following the buyer. Mr. Browder was walking down Highway 51 during a portion of the text message exchange with the [Petitioner], and Investigator Robbins and Officer Doss were able to maintain visual surveillance of Mr. Browder. However, the officers were unable to maintain visual surveillance of Mr. Browder once he began walking in a residential area. Investigator Robbins maintained contact with Mr. Browder through text messages and telephone conversations.

At 4:15 p.m., Mr. Browder sent Investigator Robbins a text message, stating that the [Petitioner] wanted to meet at Mr. Browder's home. Mr. Browder told Investigator Robbins that the [Petitioner] refused to meet in a public setting. Investigator Robbins feared that the battery to the audio/visual recording device attached to Mr. Browder was low, so he met with Mr. Browder to replace the recording device. Shortly after Investigator Robbins replaced the recording device, Mr. Browder contacted him and stated that the [Petitioner] was sending someone to complete the transaction. Investigator Robbins testified that to avoid arrest, drug dealers often have others perform the "leg work."

The video recording of the transaction showed a white sport utility vehicle with two people inside drive up beside Mr. Browder, the passenger hand Mr. Browder an item in clear wrapping while Mr. Browder gave the passenger the money, and the vehicle drive away. Shortly after the transaction, Investigator Robbins met with Mr. Browder, who turned over the drugs that he had purchased. Investigator Robbins described the drugs as "a white, chalky-like substance" wrapped in cellophane. A field test of the substance indicated that the drugs were cocaine based. The drugs were sent to the Tennessee Bureau of Investigation ("TBI") for testing, and the TBI confirmed that the drugs were cocaine based and weighed 0.81 grams. Mr. Browder was paid $ 100 for his work as a confidential informant.

Investigator Robbins obtained the tag number of the white vehicle involved in the drug transaction and learned that the vehicle was registered to Mrs. Sandra Whittington and her husband. Investigator Robbins showed a photograph of Mrs. Whittington to Mr. Browder, who identified her as the driver of the vehicle. Mr. Sterling Brown was identified as the passenger. The [Petitioner], Mrs. Whittington, and Mr. Brown were not arrested until after they were indicted in November 2016. Mrs. Whittington and Mr. Brown both gave statements to law enforcement following their arrests.

On cross-examination, Investigator Robbins testified that the arrests did not occur until approximately nine months following the offense because he wanted to continue to use Mr. Browder as an informant. Investigator Robbins stated he also was involved in the investigation of a large drug case in another county at the time. He continued to use Mr. Browder as an informant for two or three weeks following the drug transaction. Mr. Browder had been an informant for Investigator Robbins in the early 1990s and began serving as an informant again around the beginning of 2016.

3

Investigator Robbins acknowledged that the [Petitioner] was not in the video recording of the drug transaction.

Mr. Sean Browder testified that he was incarcerated at the time of trial but that he had not been made any promises in exchange for his testimony. He had been convicted of theft offenses in May and November of 2007. He worked as a confidential informant for Investigator Robbins on February 25, 2016, and was paid $ 100 for his work. Mr. Browder told Investigator Robbins that he could purchase drugs from the [Petitioner] and met with the investigator at approximately 2:00 p.m. to set up the drug transaction. Mr. Browder testified that the [Petitioner] previously had given his telephone number to Mr. Browder. Mr. Browder had the Defendant's telephone number stored in his cell phone under the name, "Key," and he believed the telephone number belonged only to the [Petitioner].

Mr. Browder sent a text message to the [Petitioner], asking to purchase $ 150 in drugs. Mr. Browder testified that it was known that he used crack cocaine. The [Petitioner] sent a text message, asking for Mr. Browder's location. At 2:25 p.m., Mr. Browder responded that he was leaving Munford and that his boss was driving him home. Mr. Browder testified that he was actually with Investigator Robbins, who dropped him off in a parking lot. Mr. Browder and the [Petitioner] continued to exchange text messages, and the [Petitioner] suggested that they meet at Subway, which was located on Highway 51 and a few blocks from Mr. Browder's home. Mr. Browder sent a text message, instructing the [Petitioner] to call when he was ready to complete the transaction.

When the [Petitioner] failed to contact him, Mr. Browder sent a text message to him at 3:41 p.m., asking, "[W]hat's up?" Mr. Browder received a text message from the [Petitioner] asking for his location and the identity of those with him. Mr. Browder responded with his location and stated that he was alone. He received a text message from the [Petitioner], requesting his home address. Mr. Browder provided his home address but attempted to direct the drug deal away from his address because the officers would have had difficulty monitoring the drug deal. The [Petitioner] refused to meet in public. Mr. Browder sent a text message stating that he would meet the [Petitioner] at Mr. Browder's mailbox, and the [Petitioner] responded, "My boy meeting you. He's there." Mr. Browder stated that he had assumed that the [Petitioner] would be present for the drug transaction. As Mr. Browder was walking down the road, a car pulled up, and he purchased drugs from

4

the occupants.  Mr. Browder did not recognize the occupants at the time of the transaction.  He then gave the drugs to Investigator Robbins.

On cross-examination, Mr. Browder testified that he had a problem with drugs for approximately twenty years and had served as a confidential informant on twenty or thirty occasions.  He acknowledged that he sometimes used the money he received as an informant to purchase crack cocaine.

Mr. Browder explained that he communicated with the [Petitioner] through text messages in order to maintain a record of their conversation.  Mr. Browder stated that he also spoke to the [Petitioner] briefly over the telephone prior to the drug transaction regarding Mr. Browder's location.

Mrs. Sandra Whittington testified that she pled guilty to delivery of 0.5 grams or more of cocaine as a result of the drug transaction in the instant case.  She served four months in jail and was not incarcerated at the time of the [Petitioner's] trial.  She denied receiving any special treatment in exchange for her testimony at trial.  She said she had been using cocaine for approximately one year prior to the offense and had continued using cocaine for three or four months after the offense.  She purchased her drugs from the [Petitioner], whom she knew as "KiKi."

Mrs. Whittington testified that on the day of the offense, she went to the [Petitioner's] home because Mr. Brown was there and needed her to drive him to work.  Mrs. Whittington stated that the [Petitioner] offered her $40 in drugs to drive Mr. Brown to a location to conduct a drug transaction.  Mrs. Whittington agreed, and the [Petitioner] told her where to go.  She stated that Mr. Brown's job was to hand the drugs to the purchaser.  When Mrs. Whittington and Mr. Brown arrived at the location, they met a man who handed Mr. Brown money in exchange for the drugs.  Mrs. Whittington stated that Mr. Brown held onto the money until he could give it to the [Petitioner].  Mrs. Whittington later received the drugs promised to her for conducting the transaction.  She was not present when Mr. Brown gave the money to the [Petitioner], and she did not know what compensation Mr. Brown received for his participation.  She said she contacted law enforcement officers following her arrest and provided a written statement.

On cross-examination, Mrs. Whittington testified that Mr. Brown was like a son to her and was living with her in February 2016.  She was aware

5

that Mr. Brown was on probation for an unrelated offense at the time of the drug transaction. She stated that she received an eight-year sentence as a result of her guilty plea. She was incarcerated for four months following her arrest and was released on probation on the day that she was sentenced.

Mr. Sterling Brown, who was also known as Mr. Sterling Dixon, testified that he pled guilty to delivery of cocaine as a result of the offense. He was on probation for an unrelated conviction at the time of the offense, and his probation was subsequently revoked. He gave a statement to the police regarding his participation in the offense following his arrest. He stated that he was not made any promises in exchange for his statement but that he was threatened with prison if he refused to provide a statement.

Mr. Brown testified that on the day of the offense, the [Petitioner], who was his cousin, gave him a quantity of drugs and asked him to deliver them. Mr. Brown stated that he was surprised by the [Petitioner's] request because the [Petitioner] had not made such a request previously. The [Petitioner] informed him of the location of the drug transaction. Mr. Brown stated that Mrs. Whittington drove him to the location where he gave a man the drugs. Mr. Brown had met the man on a prior occasion but did not recall the man's name. He believed that the man gave him $ 80 for the drugs. He understood that the money was to go to the [Petitioner], but he did not recall whether he or Mrs. Whittington gave the money to the [Petitioner].

On cross-examination, Mr. Brown testified that he received a sentence of seven months' incarceration followed by probation. He believed that his agreement to testify at the [Petitioner's] trial was beneficial to him regarding his sentence. Mr. Brown stated that he used the [Petitioner's] cell phone on occasion while at the [Petitioner's] home but did not recall whether he used the [Petitioner's] cell phone on the day of the offense.

*Brown*, at *1-4. The jury convicted the Petitioner of the delivery of 0.5 grams or more of cocaine, and the trial court sentenced him to serve twenty-five years as a Range III, persistent offender to be served at forty-five percent. *Id.*

## B. Post-Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, *pro se*, alleging that he had received the ineffective assistance of counsel on numerous bases. Appointed counsel filed an amended petition alleging, relevant to this appeal, that trial counsel ("Counsel") was

ineffective for failing to file a motion to suppress; seek a continuance; and for failing to adequately prepare for trial.

The parties presented the following evidence at a hearing on the petition: The Petitioner testified that he met with Counsel two or three times before trial, for about ten minutes each time. They did not discuss the evidence against the Petitioner or the possible witnesses to be presented at trial. The Petitioner recalled there being a discussion about a video of the drug transaction but stated he was not depicted in the video. The Petitioner stated that he was shown pictures of his text messages to the confidential informant. Counsel told him that there was a "good chance of winning" his case, and they did not discuss potential defenses or lesser-included offenses. Counsel told the Petitioner that he was not guilty of delivery of drugs since he was not at the scene when the drugs were delivered. According to the Petitioner, Counsel did not request a jury instruction on lesser-included offenses or accomplice liability related to the other people involved in the transaction.

The Petitioner maintained that he was innocent of the crime and that his guilt "boiled down" to a telephone call from the confidential informant, which the Petitioner stated his cousin answered without him knowing. The Petitioner stated that it must have been his cousin who "made the [sale]" and that the Petitioner had no knowledge of it. The Petitioner stated that, on the day of trial, the State produced a "fake document" from the Covington Police Department detailing the Petitioner's involvement in a prior domestic dispute. The Petitioner testified that he was acquitted in the domestic case and that the evidence should not have been presented at trial. The Petitioner testified that despite its surprise introduction, Counsel did not move to suppress the document, although Counsel objected to its introduction. The Petitioner wanted Counsel to investigate the document and seek to suppress the evidence. He maintained that the outcome of his trial would have been different if not for the document.

The Petitioner stated that the telephone number used to arrange the drug transaction was not registered in his name. He stated that he and Counsel did not have much time to prepare for trial and that Counsel did not possess the facts and information necessary to represent him adequately.

On cross-examination, the Petitioner stated that he was released from jail while awaiting trial and met with Counsel, however, he stated that most of the time Counsel was not available. The Petitioner agreed that the two men did in fact meet at Counsel's office. The Petitioner agreed that Counsel gave him discovery materials. He agreed that he did not provide Counsel with any witnesses' names to contact. He agreed that Counsel had an opportunity to cross-examine the two witnesses who were called and that they testified that

the Petitioner had set up the transaction.

Regarding the "fake document," the Petitioner testified that it was brought in to show the jury that he had a prior domestic case. He agreed that Counsel objected to its introduction but felt that Counsel's effort was inadequate. As to the jury instruction, the Petitioner testified that the jury should have been instructed on "accomplice testimony."

Counsel testified that he represented the Petitioner at trial and, following their discussions about what had occurred, Counsel felt they had a good position going into trial. He recalled that the Petitioner's cousin testified and, during cross-examination, his cousin admitted to using the Petitioner's telephone on the day of the transaction. Counsel stated that he specifically wanted this information to come out at trial. The Petitioner's cousin also testified during cross-examination that he did not remember whether he had given any money to the Petitioner for the drug transaction. Counsel argued to the jury that the Petitioner's cousin kept the money and, thus, without possessing the money or using the telephone, the Petitioner had little or no culpability. Counsel recalled that the State was using the theory of criminal responsibility to convict the Petitioner because they had no evidence of his presence at the transaction or that he ever possessed the drugs.

Counsel could not recall how many times he had met with the Petitioner but believed that it was more than two or three times. Counsel recalled reviewing the text messages from the informant with the Petitioner, which he stated were "very important."

Regarding the document from the Petitioner's prior domestic case, Counsel recalled that he did not move to suppress it because he did not have advance notice, but that he did object to its introduction on more than one basis. Counsel recalled that the State introduced the document, a report dated within a couple of months of the drug transaction, not to show that the Petitioner had a prior domestic incident but to show that the telephone number in the drug transaction belonged to the Petitioner. Counsel recalled that the State had other proof of the Petitioner's telephone number, particularly testimony of other witnesses who were familiar with the Petitioner and testified that the telephone number was his. Counsel agreed that the document's introduction was prejudicial to the Petitioner's case but not necessarily inadmissible.

The post-conviction court issued an order denying the Petitioner relief and stating the following:

> 1. [Counsel] failed to communicate and did not meet with Petitioner sufficiently. [The] Petitioner testified that he hired [Counsel] to represent him. He went by the office to meet with his attorney. He remembers meeting

with [C]ounsel only a few times of about ten minutes each time. Counsel told him that the State did not have good evidence against him. Counsel went over the evidence, that it consisted of text messages and the actual drug delivery was done by other people. Counsel discussed that the phone used to set up the drug transaction was in [the] [P]etitioner's name.

[The] Petitioner complains that he did not see the videos, however he was not on the videos as the [S]tate did not allege [the] [P]etitioner was present at the drug deal.

. . . .

[The] Petitioner admitted that his theory of the case was brought out at trial by [Counsel].

[The] Petitioner alleges his attorney was ineffective for allowing a false document into the trial. However, he admits that his attorney objected to the document and the court allowed the document.

[Counsel] testified that he met with [the Petitioner] multiple times and presented his position at the trial. [Counsel] usually went to the office at 6 am and would often meet with [the] [P]etitioner at 6 am when the [Petitioner] would be at the office. He used the witnesses suggested by the [P]etitioner, including [the Petitioner's cousin].

[The] Petitioner alleges [Counsel] was ineffective in allowing an illegal document into evidence. [The] Petitioner admits that [C]ounsel objected to the document used by the [S]tate. [Counsel] stated he was surprised by the document, which was only used to show that the phone number used at the drug deal was the phone number of the [P]etitioner. His objection was overruled and the document allowed into evidence. And [the] [P]etitioner did testify at the hearing that the phone number used in the drug transactions (the same as on the document) was his phone number. So the document did not present incorrect information.

. . . .

The Court finds that the [P]etitioner received effective assistance of counsel.

The Court finds that the [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210.

The [P]etitioner has not shown that (a) the services rendered by [Counsel] were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for [C]ounsel's deficient performance, the result of the proceeding would have been different.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that, because he received the ineffective assistance of counsel, the post-conviction court erred when it denied his petition. He contends that Counsel was ineffective for failing to seek a continuance when a document concerning alleged domestic abuse by the Petitioner was produced by the State at trial. He further contends that he felt rushed to go to trial because Counsel had not adequately prepared him for trial. The State responds that both of the Petitioner's arguments fail because the Petitioner has not shown how Counsel's alleged errors amount to deficient representation or how they prejudiced his case. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth

Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.

*Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

Specifically, the Petitioner contends that Counsel was ineffective for failing to challenge the introduction of the document from the prior domestic case and/or failing to move for a continuance on account of its surprise introduction. The post-conviction court found that Counsel provided effective representation to the Petitioner when he objected to the introduction of the document. The evidence does not preponderate against this finding. Counsel testified that, although he was surprised to learn of the document, it did not contain false information, so continuing the trial on account of the document would not have helped much. Counsel testified that he objected unsuccessfully to the document on several bases, including prejudice to the Petitioner. He further testified that, because witnesses agreed that the phone number listed on the document belonged to the Petitioner, the document contained relevant evidence.

The Petitioner also contends that Counsel did not adequately prepare for trial and that he felt "rushed" into trial. The post-conviction court found that Counsel and the Petitioner had met multiple times and that the Petitioner had not shown any deficiencies or prejudice regarding the manner in which Counsel prepared for trial. The evidence does not preponderate against this finding. Counsel testified that he felt the Petitioner's case was in a good position going into trial and that they were able to present the defense theory that the Petitioner was not involved with the transaction. Counsel testified that this included a productive cross-examination of the Petitioner's cousin, who admitted to being the individual who took the initial telephone call arranging the transaction. The Petitioner has not shown how a delay in the trial or further time to prepare would have resulted in a different outcome. The Petitioner is not entitled to relief.

### III. Conclusion

12

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the Petitioner's petition for post-conviction relief. In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE